**Ex parte Gerald H. POE.**

No. 69922.

Court of Criminal Appeals of Texas, En Banc.

June 8, 1988.

Randy Farrar, Huntsville, Gerald H. Poe, pro se, for applicant.

Tim Curry, Dist. Atty. and C. Chris Marshall and Betty Stanton, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

DUNCAN, Judge.

This is a post-conviction application for a writ of habeas corpus transmitted to this Court pursuant to Article 11.07, V.A.C.C.P. Applicant was found guilty before a jury of the offense of murder and punishment was assessed at twenty five years confinement in the Texas Department of Corrections. On direct appeal the conviction was affirmed by the Second Court of Appeals in a published opinion. *Poe v. State,* 630 S.W. 2d 885 (Tex.App.—Fort Worth 1982, pet. ref'd).

Applicant contends that an affirmative finding concerning the use or exhibition of a deadly weapon was not entered specifically in the original judgment by the trial court pursuant to Article 42.12, § 3f(a)(2), V.A.C.C.P.[1] Nonetheless, according to the applicant, the calculation of his parole eligibility date is being made according to Article 42.12, § 15(b), V.A.C.C.P.[2] That is, the applicant remains ineligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-third of the maximum sentence of twenty five years.

As previously noted, the applicant was found guilty by a jury of the offense of murder and also assessed his punishment. The indictment alleged that the applicant, "did then and there intentionally and knowingly cause the death of an individual, Tom-

---

1. Article 42.12, § 3f(a)(2), was in effect at the time of the applicant's conviction. This provision has been superseded by Article 42.12, 3g(a)(2), V.A.C.C.P.

2. Article 42.12, § 15(b), in effect at the time of the applicant's conviction, has been superseded by Article 42.18, § 8, V.A.C.C.P.

my Rainwater, by shooting him with a handgun." The verdict of the jury found "the defendant guilty as charged in the indictment."

Following the assessment of punishment and the pronouncement of sentence,[3] the trial court did not enter an affirmative finding that a deadly weapon had been used or exhibited during the commission of the offense in the judgment. Instead the judgment listed the offense as "Murder, to-wit a Handgun."[4] At the hearing on this application for writ of habeas corpus the trial judge amended the original judgment by way of a judgment nunc pro tunc, which added: "Findings on Use of a Deadly Weapon: Affirmative."

Applicant contends that since the original judgment did not contain a proper affirmative finding the trial judge was powerless to amend the judgment by way of a judgment nunc pro tunc and later include an affirmative finding.

The indictment alleged that the applicant committed murder by shooting the victim with a handgun, which is a deadly weapon per se. *Ex parte McLemore*, 717 S.W.2d 634 (Tex.Cr.App.1986); *Campbell v. State*, 716 S.W.2d 523 (Tex.Cr.App.1986). The jury's verdict found the applicant guilty as charged in the indictment. Thus, the trier of fact made an express determination that a deadly weapon was actually used or exhibited during the commission of the offense, thereby making a proper affirmative finding. *Polk v. State*, 693 S.W.2d 391 (Tex.Cr.App.1985).

Article 42.12, § 3f(a)(2), required: "Upon affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense or during immediate flight therefrom, the trial court shall enter the finding in the judgment of the court." *Ex parte Brooks*, 722 S.W.2d 140 (Tex.Cr.App.1986). In *Ex parte Brooks*, *id.*, we held that:

Such an affirmative finding is not a recitation of the offense in the judgment with the words 'deadly weapon', 'firearm used', or other similar phrases added to the offense for which a defendant is convicted. Nor is an affirmative finding made and *entered* when the judgment reflects the verdict of the jury and that verdict refers to a weapon. [Emphasis in original.]

. . . . .

Although the jury's verdict as the trier of fact in certain circumstances may constitute an affirmative finding being made, *Polk*, supra; [sic] *it is necessary for an affirmative finding to be entered separately and specifically in the judgment of the court by the trial court,* Article 42.12, § 3f(a)(2). [Emphasis added.]

■ In order to constitute a proper finding that a defendant used or exhibited a deadly weapon, Article 42.12, § 3f(a)(2), now 42.12, § 3g(a)(2), contemplates a two-step process. *Curry v. State*, 720 S.W.2d 261 (Tex.App.—Austin 1986, pet. ref'd.). First, the trier of fact must make an affirmative finding that the defendant used or exhibited a deadly weapon. Second, after an affirmative finding is made by the trier of fact, the finding *shall* be entered in the judgment by the trial court. *Id.*

■ The entry of "Murder, to-wit Handgun" by the trial judge in the original judgment does not constitute a proper finding that the defendant used or exhibited a deadly weapon during the commission of the offense with which he was charged. While a handgun is a deadly weapon per se for purposes of making an affirmative finding by the trier of fact, such language does not satisfy the requirement of a separate and specific entry in the judgment of a finding of use and exhibition of a deadly weapon. The three alternative methods of a proper affirmative finding delineated in

3. The verdict on punishment read, "... having found the defendant guilty of the *offense of murder as charged in the indictment,* assess his punishment at confinement in the Texas Department of Corrections for 25 yrs." (Emphasis added.)

4. The docket sheet reflected that a punishment of 25 years was assessed "for Murder with a Handgun."

*Polk, supra,* merely serve as the factual basis on which a finding of use and exhibition of a deadly weapon is justifiably entered in the judgment.

In the present case, the trial judge merely included a recitation of the offense in the judgment with the words "to-wit: Handgun." As we made clear in *Ex parte Brooks, supra,* a recitation of the offense in the judgment with the words "deadly weapon" is insufficient. See also, *Ex parte Hughes,* 739 S.W.2d 869 (Tex.Cr. App.1987). Likewise, a reference to a weapon, which is a deadly weapon per se, in the judgment is also an insufficient entry in the judgment.

Responding to a Texas Department of Corrections letter to the trial judge relative to whether an affirmative finding had been made and the applicant's habeas corpus contentions, the trial judge ordered a judgment nunc pro tunc to correctly recite his findings on the use of a deadly weapon. The order recognized the failure of the original judgment to include a proper finding of the use or exhibition of a deadly weapon. In part the order read, "it having been considered by the Court that the lack of an entry relating to the Findings on Use of a Deadly Weapon in cause number 14213 ... should be amended." The order then required that the judgment reflect the addition of "Findings on Use of Deadly Weapon: Affirmative." The applicant contends that the trial court was without authority to enter the nunc pro tunc judgment.

The purpose of a nunc pro tunc order is to correctly reflect from the records of the court a judgment actually made by it, but which for some reason was not entered of record at the proper time. *Ex parte Dopps,* 723 S.W.2d 669 (Tex.Cr. App.1986); *Alvarez v. State,* 605 S.W.2d 615 (Tex.Cr.App.1980). A judgment may be reformed so as to show the offense of which the accused was found guilty by a court and jury. *Hughes v. State,* 493 S.W. 2d 166, 170 (Tex.Cr.App.1973). A nunc pro tunc order may correct clerical errors in a judgment, but not judicial omissions. *Ex parte Dopps, supra; Alvarez v. State, supra.* A clerical error is one which does not

result from judicial reasoning or determination. *Alvarez, supra.* Finally, the classification of an error as clerical or judicial is a question of law. *Id.*

As previously stated, Article 42.12, § 3f(a)(2), clearly mandates that the trial judge enter in the judgment a finding that a deadly weapon was used or exhibited during the commission of an offense, once the trier of fact makes a proper affirmative finding as per *Polk.* In the present case, the trier of fact undoubtedly made such an affirmative finding. Once this determination had been made the trial judge was required to reflect this by making a proper entry in the judgment. The trial judge retained no discretion to do otherwise. Consequently, the failure of the trial judge to do so was not an error of judicial reasoning but rather an error of a clerical nature. See *Curry v. State, supra; Johnson v. State,* 712 S.W.2d 566 (Tex.App.—Houston [1st] 1986, no pet.); *McGinnis v. State,* 664 S.W.2d 769 (Tex.App.—Amarillo 1983, no pet.). The trial judge did not err in correcting this error by entering a judgment nunc pro tunc which properly reflected what the trier of fact had determined. The trial court has the right to correct the records to reflect the truth even though the findings may not be beneficial to the person convicted. *Shaw v. State,* 539 S.W.2d 887, 890 (Tex.Cr.App.1976).

The applicant cites *Ex parte Dopps, supra,* for the contention that the entry of a judgment nunc pro tunc is improper in this instance. That case is clearly distinguishable. In *Dopps,* the defendant was indicted for murder "by striking [an individual] about the head with a board." The defendant pled nolo contendere pursuant to a plea bargain agreement. As we stated, there was "no affirmative finding that a deadly weapon had been used in the commission of the offense." The trial court thereafter entered a judgment nunc pro tunc reflecting an affirmative finding. We held that the judgment nunc pro tunc was improper. This was because (1) there was no evidence that the parties to the applicant's plea bargain agreement contemplated an affirmative finding of a deadly weapon, (2) there

was no mention of a finding in the original judgment and conviction, the minutes of the court, the transcript of the plea proceeding, or in the waiver of rights and stipulation of evidence, (3) the State presented no evidence at the punishment hearing and (4) a board is not a deadly weapon per se. This situation is clearly different than that which is before us in this case. Obviously, the primary difference between *Dopps* and the situation before us is that a proper affirmative finding was made by the trier of fact in the applicant's case.

The trial court failed to properly enter in the judgment a finding that the trier of fact had determined that a deadly weapon had been used or exhibited during the commission of the offense. In order to correct this clerical error, the trial court justifiably entered a judgment nunc pro tunc which clearly indicated a deadly weapon finding.

The relief prayed for is denied.

CLINTON, Judge dissenting.

In pertinent part, the affirmative finding statute prescribes a multistepped process depending on what is found, *viz:*

First, an affirmative finding must be made by the proper fact finder that the defendant used or exhibited a *deadly weapon* during the commission of an offense, et cetera [Polk v. State, 693 S.W. 2d 391 (Tex.Cr.App.1985)];

Second, upon such an affirmative finding being made, "the trial court shall enter the finding in the judgment of the court;"

Third, "[u]pon an affirmative finding that the deadly weapon the defendant used or exhibited was a *firearm*, the trial court shall enter *that* finding in its judgment."

Article 42.12, § 3g(a)(2), supra.[1]

Obviously the Legislature deemed it significant that, if true, there be a particularized finding that the deadly weapon is a firearm. In § 3g(b), for one instance, when a defendant used or exhibited a *firearm*

during commission of a felony offense of the second degree or higher and is granted probation upon recommendation of the jury, the trial court is authorized to impose a period of "shock confinement" for not less than 60 nor more than 120 days. There are probably other instances where a recording the historic fact of using or exhibiting a firearm, rather than some other type of deadly weapon, has discrete consequences. But to identify them is not necessary to make the point that when a firearm is used or exhibited the Legislature mandated that the second finding be made and entered in the judgment.

The majority concludes that "Murder, to-wit Handgun" is not a proper finding under § 3g(a)(2). Majority Opinion at 875. Thus to enter it in the judgment constitutes a clerical error so that the judge of the trial court, having no discretion in the matter, shall correct that clerical error by composing a proper finding and entering it in the judgment nunc pro tunc. *Id.*, at 876.

It seems clear enough to me, however, that the jury did not in terms make an affirmative factual finding that applicant "used or exhibited a deadly weapon." Rather, it found him "guilty as charged in the indictment." Judicial reasoning is required to convert the jury's verdict into an affirmative finding. Only because the indictment alleged that applicant caused death of victim "by shooting him with a handgun," *and this Court has held that a "handgun" is a deadly weapon per se,* may it be said, as was done in *Polk v. State*, supra, that such is "an affirmative finding [of a deadly weapon] as a matter of law." *Id.*, at 394. Thus, the judge of the trial court has to make that legal determination before entering an affirmative finding in the judgment of the trial court.

Furthermore, in this instance the judge of the trial court must draft and enter in the judgment a correct affirmative finding in legal terms that meet requirements of law—as the majority opinion itself demon-

1. All emphasis is mine throughout unless otherwise noted. Furthermore, my cites are to the statutes now in effect.

strates in this very cause. Failure to prepare a legally correct affirmative finding is hardly an error of clerical nature.

Finally, the statute requires a determination as to whether a deadly weapon used or exhibited by a defendant is a firearm. That determination requires application of the law to the facts. Where the charging instrument does not allege accused caused death by "shooting with a firearm," the verdict cannot be read to constitute an affirmative finding that defendant used or exhibited a firearm. Thus, in this cause there is no affirmative finding that the deadly weapon is a firearm, and under *Polk* the trial court was not authorized to make that finding and enter it in the judgment.

Therefore, the finding now approved by this Court does not comport with § 3g(a)(2).[2]

I respectfully dissent.

---

**2.** This particular provision, especially when coupled with operation of Article 41.18, § 8(b), is the source of much difficulty in complying with it in courts below and in executing it at the administrative level. This cause is but illustrative of inordinate problems we confront weekly on that account in a host of habeas corpus proceedings seeking relief from effects of a flawed affirmative finding. There must be a better way to address a manifestly important matter of public policy.